UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELAINE PELCHY,

               Petitioner,                       5:07-CV-277
                                                                        (NAM/DEP)

    vs.

UNITED STATES OF AMERICA,

               Defendant.
_____

**APPEARANCES**                                  **OF COUNSEL:**

Ali Pappas & Cox, P.C.                   David P. Doherty, Esq.
614 James Street, Suite 100
Syracuse, New York 13203
*Attorneys for Plaintiff*

Glenn T. Suddaby, Esq.                   Paula Ryan Conan, Esq.
United States Attorney for the          Assistant U.S. Attorney
 Northern District of New York
100 South Clinton Street
Syracuse, New York 13261-7198

**NORMAN A. MORDUE, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Plaintiff commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq.,* for alleged injuries sustained in a July 2003 trip and fall accident outside the James M. Hanley Federal Building and Courthouse in Syracuse, New York. The government has moved to dismiss plaintiff's complaint on the ground that her claims are barred by sovereign immunity. Specifically, the government contends that at the time plaintiff alleges she tripped and fell on the plaza outside the federal building, maintenance and repair of the exterior plaza was the responsibility of L B & B, Associates, Inc., an independent contractor. Because the United States

has reserved its sovereign immunity under the FTCA with regard to the actions or inactions of independent contractors, the government contends that this Court lacks subject matter jurisdiction over plaintiff's claims.

## II.     FACTUAL BACKGROUND

Plaintiff provides few factual averments in her complaint concerning her alleged accident. She does, however, contend that on July 10, 2003, she tripped and fell to the ground "due to the deteriorated, uneven, unsafe and dangerous condition of stone pavers and/or materials that made up the plaza just outside of the entrance of the federal building." Plaintiff claims that as a result of her fall she sustained injuries to her left wrist, right knee, low back and neck.

According to an affidavit submitted by Kim Hallman, a Contracting Officer ("CO") for the General Services Administration ("GSA"), the Hanley Federal Building, including the plaza area where plaintiff alleges she fell, is owned by the United States government and operated by GSA. According to Hallman, in July 2003, maintenance and repair of the Hanley Federal Building, including the exterior plaza, was the responsibility of L B & B, pursuant to a ten-year contract with GSA which commenced in November 1996 and was terminated in September 2006.

## III.    DISCUSSION

A.      Applicable Standard of Review

The standard applicable to motions to dismiss are well-settled. On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir. 1998); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (2007).[1] Therefore, the issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir. 1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)).

When a defendant moves to dismiss for lack of subject matter jurisdiction, however, a different standard is applied.  In considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo,* Civil Case No. 98-5793, 1999 WL 187205, at * 2 (S.D.N.Y. Apr. 5, 1999).  Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000); *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir. 1998).  As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir. 1996).

---

[1] Contrary to the government's assertion, the Court disagrees that the Supreme Court in *Bell Atlantic* "explicitly abrogated" the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (a court may not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") for assessing Fed. R. Civ. P. 12(b)(6) motions.  It is clear that the arguably heightened pleading standard discussed by the Supreme Court in *Bell Atlantic* was discussed in the context of stating a claim for an antitrust conspiracy involving parallel conduct under § 1 of the Sherman Act.  *See* 2007 WL 1461066, at *8.  Based thereupon, the Second Circuit has expressed "uncertainty as to the intended scope of [*Bell Atlantic.*]" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007).  However, the Second Circuit has concluded "[a]fter careful consideration of [*Bell Atlantic*] and the conflicting signals from it, [that the Supreme Court] "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations **in those contexts where such amplification is needed to render the claim plausible.**" 490 F.3d at 157-58 (emphasis added).  In *Bell Atlantic*, the Supreme Court was concerned with a defendant responding to a complaint sounding in antitrust that "mentioned no specific time, place or person involved in the alleged conspiracies." 127 S. Ct. 1955 n.10.  Given that the plaintiff in this case has identified herself as the victim of the alleged negligence of the United States in addition to setting forth the time, place and at least some details concerning the alleged negligence, this case does not appear to qualify as a "context" in which the more flexible plausibility standard is required.  Nevertheless, the Court is satisfied in any event that the present pleading qualifies under the arguably new "plausibility standard" articulated in *Bell Atlantic* and discussed in *Iqbal*.

-3-

B.     Substantive Law

The FTCA is a limited waiver of the government's sovereign immunity. It is well settled that "the United States, as sovereign, 'is immune from suit save as it consents to be sued....' " *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Thus, the terms and conditions of the FTCA set the boundaries of subject matter jurisdiction for courts in entertaining tort suits against the United States. *See Soriano v. United States*, 352 U.S. 270, 276 (1957). In tort actions against the United States the FTCA permits actions to proceed when the injury complained of is:

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his [her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA in pertinent part, defines government employees to include "officers or employees of any federal agency," but excludes "contractors" from this definition. 28 U.S.C. § 2671. A critical element in distinguishing an agency from a contractor is the power of the United States "to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 528 (1973). Consequently, if the government can establish that day-to-day maintenance and repair of the area where plaintiff fell was the province of L B & B and that L B & B was an independent contractor of the United States, plaintiff's claim against the United States pursuant to the FTCA is legally deficient since the claimed negligence is not attributable to the United States. *See United States v. Orleans*, 425 U.S. 807, 814 (1976) (quoting *Logue*, 412 U.S. at 528 (difference between employees and contractors depends on the "whether [the contractor's] day-to-day operations are supervised by the Federal Government.") Thus, the key factor in determining L B & B's status relative to GSA is the amount of control the GSA exercised over the detailed operations of L B & B.

C.      GSA's Contract with L B & B

As referenced above, the government has submitted an affidavit from Kim Hallman, a GSA employee, who asserts that the United States delegated its duty for maintenance and repair of the Hanley Federal Building and Courthouse, including the exterior plaza, to L B & B for a ten-year period. Attached to Ms. Hallman's affidavit are various portions of GSA's contract with L B & B which set forth *inter alia*, the general scope of work under the contract, including "maintenance" and "structural repair" of the federal building property, supervisory responsibility of the parties and the requirement that L B & B maintain liability insurance covering its operations under the contract. Specifically, the contract provisions submitted by the government state that "[t]he Contractor shall provide all management, supervision, labor, material, supplies, repair parts, tools and equipment, and shall plan, schedule, coordinate and ensure effective and economical completion of all work and services specified in this contract."

However, it appears that the government has not submitted the portions of the contract, if any, which detail the "work and services" contemplated by the agreement with L B & B except in the most general terms.[2] For example, the contract between GSA and L B & B provided that "t]he Contractor shall provide all labor, equipment and materials necessary to perform all architectural and structural maintenance and repairs to the interior and exterior of the facility including but not limited to: exterior walls, roofing . . . sidewalks, driveways, roads, curbing, parking areas, patios, exterior stairways . . .." The contract provisions submitted by the government do not include lists of property areas or amenities, equipment or systems which were subject to the terms of the maintenance and repair agreement.

Notably, Ms. Hallman avers that "GSA personnel did not provide day-to-day supervision

---

[2] Ms. Hallman avers that she included only pertinent portions of the L B & B contract since the entire document is over 240 pages.

or direction to L B & B under this contract, nor did it control the day-to-day performance of L B & B employees." Ms. Hallman's understanding of the contract is supported by the portion of same attached to her affidavit which states that: 1) "[t]he Contractor will ensure that all work required by this contract is satisfactorily supervised;" and 2) employees of the government or GSA are expressly prohibited from "exercis[ing] either direct or indirect supervision over the Contractor's employees." While the portion of the contract submitted by the government refers to "PM inspections" by "the Contractor" the nature and scope of said inspections are not defined. According to Ms. Hallman GSA personnel "performed periodic inspections and/or quality assurance checks of the various areas and equipment covered by the contract, to monitor and assess L B & B's compliance with the contract's requirements." However, it does not appear that the government submitted the portion of the contract which describes and/or delineates the scope of GSA's right to inspect L B & B's work under the contract.

The contract also required that "[t]he level of maintenance shall ensure that the property is free of missing components or defects which affect the safety, appearance or intended use of the facility . . .." The contract defined "appearance" as "an appearance similar to the original finished appearance with only minor, unobjectionable deterioration resulting from normal use." However, the contract limited L B & B's responsibility to architectural and structural repairs/replacements where the cost of labor, equipment and materials was expected to be less than $2,000.00. Ms. Hallman avers that L B & B did "do patches and repairs to various areas of the plaza during the life of its contract with GSA." However, she did not know if the particular area where plaintiff fell had been repaired by L B & B at any time or whether it was scheduled to be repaired. Ms. Hallman is certain, however, that "repair of cracks or deteriorated pavers in the surface of the Syracuse Federal Building plaza was L B & B's responsibility."

As CO for GSA, Ms. Hallman states that she was responsible for the administration of the

L B & B contract and she had authority to designate certain contract management responsibilities to an authorized representative known as "Contract Officer Representative" ("COR"). According to Ms. Hallman there was a COR in the Hanley federal building during the life of the GSA/L B & B contract who was responsible for performing inspections and/or quality assurance checks of the various areas and equipment covered by the contract. In addition, the COR was required to "keep the CO informed of the status of those aspects of L B & B's performance under the contract."

D.     Government's Motion to Dismiss

The government argues that liability of the United States cannot be premised upon the acts or omissions of a contractor. *See, e.g., United States v. Orleans*, 425 U.S. 807, 813-814 (1976); *Dalehite v. United States*, 346 U.S. 15, 30-31 (1953); *Logue v. United States*, 412 U.S. 521, 528 (1973); *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990); *Doud v. United States*, 797 F. Supp. 138, 142 (N.D.N.Y. 1992); *Moody v. United States*, 753 F. Supp. 1042, 1046 (N.D.N.Y. 1990). Plaintiff does not dispute this contention nor would she have grounds to do so under the settled law referenced above. Moreover, that L B & B was a contractor of GSA at the time of plaintiff's accident appears undeniable. Indeed, plaintiff does not seriously object to the government's contention that L B & B was a contractor. What plaintiff does claim is that her charge of negligence against the United States is not based on a contractor's faulty repair of pavers on the plaza area where her accident occurred. Instead, plaintiff contends that the United States via its agent GSA - not the contractor L B & B - was negligent based on its failure to remedy or warn of an alleged defective and dangerous condition on the plaza that was present for a "significant time" prior to her fall. While it is clear that L B & B was responsible for "maintaining" the Hanley federal building and plaza and performing "structural repairs," it is not clear from the portions of the contract submitted by the government what the term "maintain" means insofar as the day-to-day operation of the property or what would have triggered L B &

B's obligation to conduct a repair. Moreover, it is not clear what the obligations of the respective parties to the contract were concerning repairs valued at over $2,000.00.

In its reply memorandum of law, the government cites a number of cases dismissed for lack of jurisdiction under the FTCA based on a long term maintenance contract with language similar or identical to the portions of the L B & B contract presently before the Court. *See Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp.2d 57, 60-61 (S.D.N.Y. 2005); *Carter v. United States*, 1998 WL 744009, *2 (S.D.N.Y. Oct. 26, 1998); *Burke v. United States*, 1996 WL 671151, *1 (S.D.N.Y. Nov. 19, 1996). In each of these cases, the courts found that GSA had contracted with a private entity for maintenance and/or repair services of federal property. In each of these cases, GSA maintained a right to inspect the contractor's performance under the contract but did not retain any supervisory role over the contractor's day-to-day work. In each of these cases, the courts determined that the claims were subject to dismissal under the FTCA since the actions or inactions complained of by the plaintiffs in each case related solely to the negligence of the respective contractors.

However, it is also true that in each of these cases it was explicitly clear based on the contract documents and/or evidentiary material presented by the government that the specific property or defect complained of by the plaintiffs were under the purview of the contractor. For example, in *Fisko*, GSA entered into a contract with Eastco Building Services for "maintenance, supervision, and repair" of the sidewalks and drainage systems in the plaza area surrounding the former World Trade Center. 395 F. Supp.2d at 60. The plaintiff was injured when she tripped and fell due to a "defective sidewalk and an unsecured drain cover" on the plaza between buildings Five, Six and Seven. *Id.* Section J, Exhibit 1, Paragraph B(1)(i) of the Eastco Contract included "storm drainage equipment and systems" as equipment to be "operated, maintained and repaired" by Eastco. *Id.* at 61. However, in support of its motion, the government also submitted

-8-

Section J, Exhibit 1, paragraph B(2) of the Eastco contract which stated: "The GSA Form 1736 (Equipment Inventory List) provides an inventory of the equipment and systems installed in the building(s) which must be serviced." *Id.* Importantly, the court noted in *Fisko* that Section J, Exhibit 2, of the Eastco contract, which contained GSA Form 1736, specifically included "40 areaway drains" on the World Trade Center plaza among the "equipment" to be maintained and serviced by Eastco. *Id.*

In *Carter v. United States*, the plaintiff was injured in a Veteran's Administration ("VA") building when a toilet paper dispenser fell off the wall and struck her ankle. 1998 WL 744009, *1. The government's contract with PMS, a maintenance company which serviced the building, provided, like the L B & B contract in the present case, that:

> [PMS] shall provide all labor, equipment and materials necessary to perform all architectural and structural maintenance and repairs to the interior and exterior of the facility . . .. The level of maintenance shall assure that the property is free of missing components or defects which affect the safety, appearance or intended use of the facility.

1998 WL 744009, *2. The relevant portions of the PMS contract were attached to the declaration of Chris Kramer, GSA's COR in the VA building, which the government submitted in support of its motion to dismiss. Under GSA's contract with PMS, the latter was "solely responsible for all repairs expected to cost $500 or less" and "as to such repairs, PMS was not obligated even to notify the government." 1998 WL 744009, *3. The only dispenser repair estimate in the record before the court in *Carter* was for $100. *See id.* Therefore, the court credited Kramer's assertion that PMS would have been responsible for any defective condition that resulted from negligent maintenance of the toilet paper dispenser. *See id.* Further, in *Carter*, the government also attached a portion of its janitorial services contract with a company called Fedcap to Kramer's declaration which "established that Fedcap, was responsible for the cleaning of 'all fixtures, including metal and chrome surfaces, urinals, ... dispensers and ceramic wall surfaces .'"

-9-

Moreover, under its contract with GSA, Fedcap was required to "report fires, hazardous conditions and items in need of repair to the [COR]."

Finally, in *Burke v. United States*, another case relied upon by the government at bar, a case with facts nearly identical to those herein, the plaintiff claimed that "she fell on a piece of sidewalk which was "broken, cracked and uneven," and that GSA was "negligent in failing to repair it or to place ropes, barricades or warning signs." 1996 WL 671151, *2. In *Burk*e, the government submitted a declaration from a GSA representative named Segermeister who averred, referencing portions of the contract, that the maintenance contractor was responsible for any sidewalk repairs expected to cost between $2,000.00 and $25,000.00. *See id.* The Segermeister declaration also stated that repair of the type of defect complained about by plaintiff "would rarely exceed $2,000.00 and certainly would never exceed $25,000.00." *Id.* Finally, Segermeister contended that regardless of the cost of the actual repair, "the contract clearly contemplated that [the contractor] would be responsible for taking steps (such as placing ropes, barricades or warning signs) to maintain safety with respect to all defective conditions." *Id.*

In the case at bar, the government did not submit any portion of the L B & B contract or any exhibit, attachment or addendum thereto which lists or delineates the scope of L B & B's day-to-day, week-to-week or even month-to-month responsibilities inside the Hanley Federal Building and on the exterior plaza. Nor did the affidavit submitted by Ms. Hallman provide the afore-referenced information. Thus the government has failed to establish as a matter of law that supervision of conditions on the exterior plaza where plaintiff fell and/or identification of potentially dangerous or defective areas thereon was the exclusive responsibility of L B & B under the contract. Morever, the government did not submit evidence concerning the cost of repairs of pavers on the plaza where plaintiff fell. Thus, it is not at all clear from the government's motion that L B & B would have been responsible to undertake any such repairs or

-10-

that GSA itself would never have been responsible for repairing the plaza.

IV.   CONCLUSION

Based on the foregoing, the Court finds that while it is certain L B & B was a contractor in this case, it is not yet clear as a matter of law that L B & B was solely responsible for the defective property condition alleged in plaintiff's complaint.

**WHEREFORE**, it is hereby

**ORDERED** that the government's motion to dismiss the complaint is **DENIED** without prejudice.

IT IS SO ORDERED.

Dated: March 12, 2008
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

-11-